```
UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
---------------------------------------------------------------------X
                                                                     :
IULIIA POTAPOVA,                                                     :
                                                                     :
                                        Plaintiff,                   :
                                                                     :    23-CV-571 (JMF)
                          -v-                                        :
                                                                     :    MEMORANDUM OPINION
TOYOTA MOTOR CREDIT CORPORATION,                                     :    AND ORDER
                                                                     :
                                        Defendant.                   :
                                                                     :
---------------------------------------------------------------------X
```

JESSE M. FURMAN, United States District Judge:

Plaintiff Iuliia Potapova brings this action against Toyota Motor Credit Corporation ("Toyota") pursuant to the Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681s-2(b) *et seq*. Potapova alleges that she was the victim of identity fraud that resulted in an inaccurate report that she had defaulted on a vehicle lease and that, when notified by multiple credit reporting agencies (or "CRAs") about the fraud, Toyota failed to conduct a reasonable investigation in violation of the FCRA. Toyota now moves, pursuant to Rule 56 of the Federal Rules of Civil Procedure, for summary judgment. Upon review of the parties' motion papers, the Court concludes that the motion must be DENIED. Put simply, Potapova may have an uphill battle to persuade a jury, but there are factual disputes that preclude summary judgment.

Section 1681s of the FCRA "imposes a duty upon furnishers of credit information to investigate credit disputes in accordance with the statute after receiving notice of a dispute from a credit reporting agency ('CRA')." *Anthony v. GE Cap. Retail Bank*, 321 F. Supp. 3d 469, 477 (S.D.N.Y. 2017). Under this provision, furnishers such as Toyota are required to "1) conduct an investigation with respect to the disputed information, 2) review all relevant information provided by the CRA, 3) report the results of the investigation to the CRA, and 4) if the

investigation finds that the information is incomplete or inaccurate, report those results to all other CRAs that had received the information." *Id.* (quoting *Ritchie v. N. Leasing Sys., Inc.*, No. 12-CV-4992 (KBF), 2016 WL 1241531, at *17 (S.D.N.Y. Mar. 28, 2016)). "Although the Second Circuit has not yet decided the 'specific contours' of the furnisher's duties, courts within and outside the Second Circuit have assumed an objective reasonableness standard for 'judging the adequacy of the required investigation.'" *Rubin v. HSBC Bank USA, NA*, No. 20-CV-4566 (FB), 2024 WL 649916, at *3 (E.D.N.Y. Feb. 16, 2024) (quoting *Dickman v. Verizon Commc'ns, Inc.*, 876 F. Supp. 2d 166, 172 (E.D.N.Y. 2012)). That reasonableness inquiry "depends upon the nature and scope of the consumer's dispute to the CRA" and is considered "in light of what is learned about the nature of the dispute from the description in the CRA's notice of dispute." *Napoleon v. 5665 Sunrise Highway Corp.*, No. 18-CV-5703 (DG), 2021 WL 3469991, at *9 (E.D.N.Y. July 7, 2021)). "Generally, the question of reasonableness in FCRA cases presents a fact question for the jury." *Rubin*, 2024 WL 649916, at *3.

Of potential significance, "[a] prerequisite for any FCRA claim is that the challenged credit information is incomplete or inaccurate." *Suluki v. Credit One Bank, NA*, 666 F. Supp. 3d 403, 410 (S.D.N.Y. 2023) (quoting *Ostreicher v. Chase Bank USA, N.A.*, No. 19-CV-8175 (CS), 2020 WL 6809059, at *3 (S.D.N.Y. Nov. 19, 2020)). Potapova may ultimately founder in meeting that threshold requirement, as Toyota makes a forceful argument that there was, in fact, no identity fraud. For example, Potapova "communicated via telephone call with [Toyota] on over 20 different occasions between October 2018 and September 2019 and in each communication, [Potapova] confirmed her address and telephone number and connection to the account," including by indicating "her relationship with the buyer on the account and stat[ing] that she would speak with him regarding making payments on the account." ECF No. 39 ("56.1

2

Statement"), ¶¶ 39-40. And the police, after finding that Potapova "had a business relationship" with the buyer and that "she would sign permits and other documents with" him, concluded that Potapova "was trying to disassociate herself from [the] buyer because the business [had] failed and her credit was affected." 56.1 Statement ¶ 56. But Potapova provides sworn testimony that she neither applied nor authorized anyone to apply on her behalf for the lease at issue and that she did not herself affix the personal information or signatures that appear on the lease documents (or authorize anyone to do so on her behalf). ECF No. 55 ("Potapova Decl."), ¶¶ 4-7. That is enough to preclude summary judgment on this ground. *See, e.g.*, *Suluki*, 666 F. Supp. 3d at 411 ("[W]hen the party against whom summary judgment is sought comes forth with affidavits or other material obtained through discovery that generates uncertainty as to the true state of any material fact, the procedural weapon of summary judgment is inappropriate.").

Nor, on the present record, can the Court say as a matter of law that Toyota conducted reasonable investigations in response to the three dispute notices about Potapova that it received from CRAs. It is true that Toyota conducted a reasonably thorough investigation of Potapova's claim of identity fraud in response to a direct complaint from her. *See* ECF No. 42 ("Blunt Decl."), ¶¶ 7-39. Significantly, however, that investigation was separate from the investigations that Toyota conducted in response to the CRA notices — which form the basis of Potapova's FCRA claims — and there is no evidence in the record that those who conducted the latter investigations even knew about the former. Instead, the record indicates that Toyota's investigations in response to the CRAs were brief, ranging from one to three days, and consisted of little or nothing more than comparing Potapova's name, date of birth, address, and social security number in the notices with their internal records. *See* 56.1 Statement ¶¶ 3-22. Given that the gravamen of Potapova's reports was that her identity had been used without her

authorization, a jury could certainly find that such limited investigations were unreasonable. *See, e.g.*, *Lara v. Experian Info. Solutions, Inc.*, 625 F. Supp. 3d 1062, 1072 (S.D. Cal. 2022) (concluding that a reasonable jury could find that the furnisher's investigation was unreasonable where the furnisher "appears to have only reviewed its own file in response to Plaintiff's 2018 [automated credit dispute verification], which raised an issue of identity theft and thereby challenged the legitimacy of those exact documents"); *Ward v. Trans Union, LLC*, No. 21-CV-2597 (LTB), 2023 WL 4330849, at *13 (D. Colo. May 12, 2023) ("Some courts, in denying a FCRA defendant's motion for summary judgment, have done so, at least in part, on the basis that a reasonable jury could find that the furnisher's failure to check IP addresses or to confirm income verification documents, where there are concerns over identity fraud, is not objectively reasonable.").[1]  The fact that Toyota sent Potapova form letters seeking more information, and she did not respond, does not alter that conclusion. *See, e.g.*, *Miller v. Westlake Servs., LLC*, 637 F. Supp. 3d 836, 850-51 (C.D. Cal. 2022) ("[S]ending a letter requesting documents is not an investigation."); *see also Simonson v. IQ Data Int'l, Inc.*, No. 22-CV-215 (JDP), 2023 WL

---

[1]  *Farren v. RJM Acquisition Funding, LLC*, No. 4-CV-995 (GEKP), 2005 WL 1799413 (E.D. Pa. July 26, 2005), and *Krajewski v. Am. Honda Fin. Corp.*, 557 F. Supp. 2d 596 (E.D. Pa. 2008), upon which Toyota relies, *see* ECF No. 43 ("Toyota Mem."), at 13-16; ECF No. 57 ("Toyota Reply"), at 10-11, do not call for a different conclusion.  The *Farren* court held that the furnisher "had no duty to investigate beyond a determination that the debt was '[plaintiff's],' in the sense that the records showed the debt was accrued by [plaintiff] (or someone who knew [plaintiff's] name and social security number)," but only where the CRA's notice "*would not lead [the furnisher] to believe that [plaintiff] was the victim of identity theft.*" 2005 WL 1799413, at *5 (emphasis added).  Similarly, the court in *Krajewski* held that "*[a]bsent allegations of fraud, identity theft, or other issues not identifiable from the face of its records*, the furnisher need not do more than verify that the reported information is consistent with the information in its records." 557 F. Supp. 2d at 609 (emphasis added) (citing *Westra v. Credit Control of Pinellas*, 409 F.3d 825, 827 (7th Cir. 2005)).  The CRA's notices here all explicitly identified "identity fraud" as the nature of the concern.  *See, e.g.*, 56.1 Statement ¶¶ 3, 11.

6810090, at *7 (W.D. Wisc. Oct. 16, 2023) ("[A] consumer's failure to respond to a furnisher's request for information is relevant but not dispositive to the reasonableness question.").

Although the issue is closer, there is also sufficient evidence in the record from which a reasonable jury could find both that Toyota willfully violated the FCRA and that Potapova suffered actual damages. As to the former, a jury could find that Toyota has a policy of conducting only a cursory review of its own records, even in the face of an identity-fraud claim, and that this constituted a reckless disregard of Potapova's FCRA rights. *See Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68-69 (2007); *see also, e.g.*, *Holmes v. Telecheck Int'l, Inc.*, 556 F. Supp. 2d 819, 847 (M.D. Tenn. 2008) (noting that "[w]illfulness under the FCRA is generally a question of fact for the jury" and that "[p]roof of a pattern and practice is relevant and is one way to establish willfulness"); *Boggio v. USAA Fed. Sav. Bank*, 696 F.3d 611, 620 (6th Cir. 2012) (holding that summary judgment for the defendant was unwarranted where the plaintiff offered evidence that the furnisher's policy "prohibited its employees from performing anything more than a cursory confirmation of his status before reporting back to a CRA"); *Burns v. Ford Motor Credit Co. LLC*, No. 19-CV-1647 (RBS), 2021 WL 1962856, at *5 (E.D. Pa. May 17, 2021) (noting that "the fact that a furnisher routinely invokes 'blanket policies' can support a finding of willfulness" and denying summary judgment as to willfulness where "three different analysts followed the same investigative procedure, as [the furnisher's] policy requires them to do, and each simply confirmed the existing information on Plaintiff's account"). As to the latter, Potapova testified not only that she had suffered emotional and personal damages, but also that she had been denied credit in other instances, perhaps most notably in attempting to buy a home with her husband, as a result of the Toyota credit line appearing on her credit report. *See* ECF No. 56-7 ("Potapova Depo. Tr."), at 100-13; *see also* Potapova Decl. ¶¶ 9-11; *cf. Napoleon*, 2021

5

WL 3469991, at *10 (finding no actual damages where the plaintiff "'presented no evidence that any[one] even received h[er] credit report,' let alone that her credit report caused her to lose out on an opportunity" (quoting *Casella v. Equifax Credit Info. Servs.*, 56 F.3d 469, 475-76 (2d Cir. 1995))); *Severini v. Pa. Higher Educ. Assistance Agency*, No. 18-CV-2775 (ER), 2020 WL 1467396, at *7 (S.D.N.Y. Mar. 25, 2020).

In short, Toyota's summary judgment motion must be and is DENIED.[2]  Unless and until the Court orders otherwise, the parties shall submit a proposed Joint Pretrial Order and associated materials (in accordance with Section 5 of the Court's Individual Rules and Practices in Civil Cases, available at https://www.nysd.uscourts.gov/hon-jesse-m-furman) **within forty-five days of the date of this Memorandum Opinion and Order**.  The Court will schedule a trial date — or a conference to discuss a trial date — after reviewing the parties' submissions.  In the meantime, the Court is of the view that the parties should try to settle this case without the need for a trial that would be expensive and risky for both sides.  To that end, the Court directs the parties **to confer immediately** about the prospect of settlement and conducting a settlement conference before the assigned Magistrate Judge, a mediator appointed by the Court, or a mediator retained privately.  If the parties agree that a settlement conference would be appropriate, they should promptly advise the Court and, if needed, seek an appropriate referral and extension of pretrial deadlines.

---

[2]  In light of that result, the Court need not and does not address Potapova's request to strike the declarations of Marc Murrin, ECF No. 41 ("Murrin Decl."), and Christopher Blunt, ECF No. 42 ("Blunt Decl."). *See* ECF No. 53 ("Potapova Opp'n"), at 2-7.  Toyota represents that it does not intend to call Murrin at trial, but makes no such representation about Blunt.  *See* Toyota Reply 3.  Within **three business days of the date of this Memorandum Opinion and Order**, Toyota shall notify Potapova if it intends to call Blunt as a witness at trial.  If it does, Potapova is granted leave to depose him **within four weeks of the date of this Memorandum Opinion and Order**.

The Clerk of Court is directed to terminate ECF No. 38.

SO ORDERED.

Dated: September 3, 2024
      New York, New York

                                            JESSE M. FURMAN
                                      United States District Judge