UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

**IULIIA POTAPOVA,**

    **Plaintiff,**

v.                                      CASE NO.: 1:23-cv-00571-JMF

**TOYOTA MOTOR CREDIT CORPORATION,**

    **Defendant.**

## PLAINTIFF'S MOTION IN LIMINE

Pursuant to Section 6.B.i. of the Court's Individual Rules and Practices in Civil Cases Plaintiff Iuliia Potapova, by Counsel, has moved *in limine* to prohibit the Defendant, Toyota Motor Credit Corporation, from making suggestions, statements, argument, or introducing evidence or witnesses at trial. In support of her motion *in limine*, the Plaintiff supplies this memorandum of law.

### OVERVIEW

In this Fair Credit Reporting Act ("FCRA") case, Plaintiff—the victim of identity theft—alleges Defendant Toyota Motor Credit Corporation inaccurately attributed to her a lease for a Lexis vehicle to which Plaintiff did not consent. Plaintiff disputed the inaccurate reporting with the credit bureaus, provided to Toyota a police report alleging her claim of identity theft, and also provided to Toyota a Federal Trade Commission Identity Theft report affirming her claim. Toyota understood those disputes to be claiming that the subject account was opened fraudulently, yet it failed to reasonably investigate Plaintiff's disputes. Plaintiff sued under the FCRA, 15 U.S.C. § 1681s-2(b) and following discovery, Toyota moved for summary judgment on all elements of

Plaintiff's claims. The Court denied that motion in its entirety, *Potapova v. Toyota Motor Credit Corp.*, No. 23-cv-571 (JMF), 2024 WL 4026216, at *1 (S.D.N.Y. Sept. 3, 2024), setting up the case for trial.

At the upcoming trial, Plaintiff expects that Toyota will present evidence and argument on multiple topics that are irrelevant, improper, will waste time, confuse the jury, and have been already decided against Toyota. She therefore asks that the Court rule *in limine* on the issues discussed herein, so that Party, Court, and jury resources are not wasted with the presentation of irrelevant or already-determined issues.

### CERTIFICATE OF CONFERENCE

Plaintiff certifies, as required by Section 6.B.i. of the Court's Individual Rules and Practices in Civil Cases, that her Counsel conferred with Counsel for Toyota by telephone on January 10, 2025, and discussed the points Plaintiff addresses herein in an attempt to reach agreement without the Court's intervention. The Parties were unable to reach an agreement on the issues below.

### APPLICABLE LEGAL STANDARDS

An *in limine* motion is intended to "aid the trial process by enabling the Court to Rule in advance of trial on the relevance of certain forecasted evidence, as to the issues that are definitely set for trial, without lengthy argument at, or interruption at trial." *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996). The Court has inherent authority to manage the course of its trials, including the right to rule on motions *in limine*. *Highland Capital Mgmt., L.P. v. Schneider*, 551 F. Supp. 2d 173, 176–77 (S.D.N.Y 2008) (citing *Luce v. United States*, 469 U.S. 38, 41, n.4 (1984)).

Toyota must be prohibited from attempting to introduce evidence, witnesses, statements, argument, or defenses foreclosed by the Court's many rulings in this case, that are of little or no

2

relevance and present possible unfair prejudice, and/or which Toyota did not timely disclose under Federal Rule of Civil Procedure 26(a)(1) or (e). To those ends, Plaintiff seeks an order specifically to exclude the following information from use by Toyota at the trial.

**ARGUMENT AND AUTHORITIES**

I. **The Court Should Exclude Any Argument, Discussion, Or Evidence Regarding The Investigation That Christopher Blunt Or Anyone In Toyota's Fraud Department Conducted.**

Only relevant evidence is admissible under the Federal Rules of Evidence. FED. R. EVID. 402. Relevant evidence may still be excluded by the Court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." FED. R. EVID. 403. Rule 403 allows the Court "broad discretion to balance probative value against possible prejudice." *United States v. Bermudez*, 529 F.3d 158, 161 (2d Cir. 2008). Here, any suggestion or evidence presented about the investigation that Mr. Blunt and Toyota's Fraud Department conducted is irrelevant and unfairly prejudicial, and has a high likelihood of confusing the issues and misleading the jury, which ultimately will only waste time and confuse the jury.

Although Toyota has given much weight to the investigation that Mr. Blunt conducted in response to Plaintiff's direct dispute with Toyota regarding the identity theft that resulted in an inaccurate credit reporting, anything done by Toyota's Fraud Department has no bearing on Toyota's investigations that were conducted pursuant to Plaintiff's disputes under the FCRA. As the Court discussed in denying Toyota's Motion for Summary Judgment, what Mr. Blunt did is irrelevant to anything the jury must determine:

> It is true that Toyota conducted a reasonably thorough investigation of Potapova's claim of identity fraud in response to a direct complaint from her. *See* ECF No. 42 ("Blunt Decl."), ¶¶ 7-39. *Significantly, however, that investigation was separate from the investigations that Toyota conducted in response to the CRA notices —*

3

> *which form the basis of Potapova's FCRA claims — and there is no evidence in the record that those who conducted the latter investigations even knew about the former*. Instead, the record indicates that Toyota's investigations in response to the CRAs were brief, ranging from one to three days, and consisted of little or nothing more than comparing Potapova's name, date of birth, address, and social security number in the notices with their internal records.

*Potapova*, 2024 WL 4026216, at *2 (emphasis added). As the Court also pointed out in the paragraph just above, the central issue for trial is whether Toyota conducted a reasonable investigation in response to Plaintiff's disputes with the Consumer Reporting Agencies ("CRAs"). But Mr. Blunt's investigation had nothing at all to do with Plaintiff's disputes to the CRAs. Any suggestion that his investigation was reasonable or relevant to Plaintiff's FCRA disputes is both misleading and irrelevant, and therefore should be precluded from consideration by the jury.

Mr. Blunt did nothing to change this result in his recent deposition, agreeing that his work had nothing at all to do with investigations that result from ACDVs arriving at Toyota:

**Q.** Do you know what an ACDV is? Have you heard of that?

**A.** I know what it is. I don't know the acronym of it, but I know -- I kind of in a sense know what it is.

**Q.** Okay. Is it something that you deal with ordinarily when you're conducting the kind of dispute investigations that we're talking about?

**A.** No. That's a separate department.

(Ex. 1, Blunt Dep. at 29:1–9.) He also has nothing to do with e-OSCAR, which is the computerized system the CRAs use to send and receive disputes covered by the FCRA:

**Q.** Okay. What about e-OSCAR? Do you know what e-OSCAR is?

**A.** I know what it is.

**Q.** Okay. Is it something that you use when you're conducting the sort of fraud investigations that we're talking about?

**A.** No.

4

> **Q.** And you don't use ACDVs either; right?
>
> **A.** Say that again, sir.
>
> **Q.** You don't use -- or I guess maybe I should say this more clearly. You don't use or complete ACDVs either; right?
>
> **A.** No.

(*Id.* at 29:10–22; *see* Ex. 2, Mallicoat Dep. at 32:22–33:5 (describing e-OSCAR).) This testimony confirms that Mr. Blunt plays no role in the credit-dispute investigations that underpin Plaintiff's claims.

Excluding this evidence is also in line with the law-of-the-case doctrine. In the Court's summary-judgment ruling, it explained Mr. Blunt's "investigation was separate from the investigations that Toyota conducted in response to the CRA notices — which form the basis of Potapova's FCRA claims — and there is no evidence in the record that those who conducted the latter investigations even knew about the former." *Potapova*, 2024 WL 4026216, at *2. It is therefore the law of the case that Mr. Blunt's investigation is irrelevant to Plaintiff's claims under the FCRA, which is, separately, enough grant Plaintiff's Motion on this point.

To allow Toyota's witnesses to testify or present evidence about an investigation by the Fraud Department will also confuse the jury and waste time. Should they testify and be permitted to discuss these investigations, or should Toyota discuss it through other evidence or witnesses, the Parties and then the Court will spend at least as much additional time explaining to the jury why his investigation does not matter at least because: (1) it was not conducted pursuant to an ACDV that Toyota received from one of the CRAs; and (2) no one at Toyota who was investigating Plaintiff's FCRA disputes reviewed Mr. Blunt's findings. *Potapova*, 2024 WL 4026216, at *2. Mr. Blunt confirmed this second point at his deposition, too. (Ex. 1, Blunt Dep. at 76:21–79:6 (stating

5

he saw no indication that anyone at Toyota looked at his notes when investigating Plaintiff's credit-reporting disputes).)

So while Toyota would no doubt like to highlight Mr. Blunt's "investigation" during any testimony and evidence it will present, that irrelevant discussion stands to also confuse the jury because what Mr. Blunt did is not the type of investigation that underpins a Section 1681s-2(b) claim like the one Plaintiff presses against Toyota. *Potapova*, 2024 WL 4026216, at *2; 15 U.S.C. § 1681s-2(b). The Court should therefore prohibit Toyota from presenting any evidence of any Fraud Department investigation at trial.

## II. Any Argument, Discussion, Or Evidence Regarding Mr. Blunt's Notes About Statements Made By The Police Or Dealership During His Investigation Should Be Excluded.

Should the Court decline to exclude testimony about Mr. Blunt's investigation altogether, it should still preclude Toyota from introducing any evidence or testimony concerning what the police or the dealership purportedly told Mr. Blunt during his investigation. Such evidence constitutes inadmissible hearsay under Federal Rule of Evidence 802 and does not fall within any exception under the Federal Rules of Evidence.

Hearsay is defined as an out-of-court statement offered to prove the truth of the matter asserted. FED. R. EVID. 801(c). Here, Plaintiff expects Toyota will attempt to introduce statements allegedly made by the police and the dealership to Mr. Blunt for the truth of their contents—namely, to support Toyota's assertion that it accurately reported that the subject account belonged to Plaintiff in response to her credit-reporting disputes. These statements, however, are textbook hearsay and must be excluded unless they qualify under a recognized exception, which they do not.

Toyota may argue that its account notes or records reflecting what Mr. Blunt heard fall under the business records exception in Rule 803(6) of the Federal Rules of Evidence. Those arguments will fail because the statements made by the police and the dealership are outside the scope of Toyota's business records. The Rule permits admission of records that are (1) made at or near the time of the event, (2) by someone with knowledge, and (3) in the course of regularly conducted business activity. FED. R. EVID. 803(6)(A)–(C). However, the exception does not extend to hearsay within hearsay. *See* FED. R. EVID. 805. In other words, while information in Toyota's records may in some circumstances meet Rule 803(6)'s requirements, Mr. Blunt typing "the police stated [and what the police stated]" into Toyota's records does not make what the police (or dealership) told him exempt from exclusion as hearsay under the business records exception. *See Brown v. Pagan*, No. 08 CV 8372, 2010 WL 1430702, at *1 (S.D.N.Y. Apr. 8, 2010) (explaining that a business record "must be broken down into its component parts to assess its admissibility" and if the record contains statements from someone outside the business which is seeking to admit the statements for their truth, such statements "are hearsay within hearsay and must fit into their own hearsay exceptions to be admissible"); *United States v. Baker*, 693 F.2d 183, 188 (D.C. Cir. 1982) ("[I]f the source of the information is an outsider, Rule 803(6) does not, by itself, permit the admission of the business record. The outsider's statement must fall within another hearsay exception to be admissible because it does not have the presumption of accuracy that statements made during the regular course of business have.").

Even if Toyota's records into which Mr. Blunt places his investigation results qualify as a business record, the statements from the police and the dealership constitute third-party hearsay and do not satisfy the business record exception, rendering the statements themselves inadmissible. Courts have long-recognized such statements as hearsay and excluded them. *See United States v.*

*Cruz*, 894 F.2d 41, 44 (2d Cir. 1990) ("The district court correctly refused to receive the two versions of the report into evidence in the absence of a showing that they fit within the hearsay within hearsay exception.").

Additionally, Toyota never disclosed the police or dealership as witnesses it may use in support of its case, so they cannot now be deposed and then cross-examined at trial to verify the accuracy of the statements Mr. Blunt claims he heard. Allowing such evidence would deprive Plaintiff the opportunity to challenge its reliability, rendering its admission unfairly prejudicial. *See* FED. R. EVID. 403. Admission of the police and dealership statements is also improper because they are irrelevant and will confuse the jury, as there is no evidence the statements were considered in the investigation of Plaintiff's FCRA disputes. FED. R. EVID. 403. The Court should therefore order such statements excluded from evidence at trial.

### III. Any Argument, Discussion, Or Evidence That Plaintiff Must Prove She Was The Victim Of Identity Theft To Prevail On Her Claims.

Though Toyota has not raised the argument before in this case, Plaintiff anticipates that Toyota may argue at trial that for Plaintiff to prevail on her claims she must affirmatively prove that she was the victim of identity theft. Nothing in Section 1681s-2(b) requires that Plaintiff prove anything other than that Toyota (1) "received notice of a credit dispute from a [CRA] (as opposed to from the consumer alone) and (2) the furnisher negligently or willfully failed to conduct a reasonable investigation." *Ballentine v. Credit One Bank, N.A.*, No. 24-cv-4710 (LTS), 2024 WL 4855961, at *3 (S.D.N.Y. Nov. 21, 2024) (alteration in original). Suggesting Plaintiff must affirmatively prove that she was the victim of identity theft places her in the nearly impossible position of having to establish something that she cannot conclusively do without an admission from the perpetrator of the fraud, and no one possesses that confession. Plaintiff therefore should not be held to an unachievable standard in what is a garden-variety FCRA trial.

What is more, expecting Plaintiff to prove that she is the victim of identity theft will waste jury, Court, and party resources by requiring a trial within a trial. The Parties will spend an inordinate amount of trial time attempting to meet and defend against this claim, and then must explain to the jury how the requirement fits within the greater requirements of a Section 1681s-2(b) claim, despite there being no caselaw of which Plaintiff is aware that requires substantive proof of identity theft (or any underlying legal theory, really) to succeed on a Section 1681s-2(b) claim. Because the jury will be tasked with determining whether Toyota reported inaccurate information and reasonably investigated Plaintiff's disputes, *Ballentine*, 2024 WL 4855961, at \*3, taking it on a side trip to establish identity theft will waste time, confuse the jury, and present irrelevant issues on which they need not deliberate because they are not "of consequence in determining the action." FED. R. EVID. 401(b).

### IV. Any Argument, Discussion, Or Evidence That Toyota Had An Interpretation Of The FCRA That Supports Its Procedures For Processing Credit-Reporting Disputes.

Plaintiff's ability to obtain punitive damages for Toyota's willful conduct also survived Toyota's attempt at summary judgment. *Potapova*, 2024 WL 4026216, at \*2 (concluding "a jury could find that Toyota has a policy of conducting only a cursory review of its own records, even in the face of an identity-fraud claim, and that this constituted a reckless disregard of Potapova's FCRA rights") (citing *Safeco Ins. Co. of Am. v. Burr*, 551 U.S. 47, 68–69 (2007)). One way for Toyota to avoid an award of punitive damages is to show it interpreted, or had a "reading," of the FCRA that drove its decisions and the resulting conduct fell short of being "not only a violation under a reasonable reading of the statute's terms, but shows that the company ran a risk of violating the law substantially greater than the risk associated with a reading that was merely careless." *Safeco*, 551 U.S. at 69.

Toyota's Rule 30(b)(6) witness was unable to provide any specifics or evidence that it interpreted the FCRA in any way in arriving at its dispute-investigation procedures, so it should not be permitted to concoct such a defense at trial. Plaintiff specifically sought information about Toyota's investigation procedures and what Toyota considered in creating them:

> **Q.** So this dispute process where we have the ACDV investigator doing the things that he or she does for an identity theft dispute and then the second sort of track where the fraud department takes over and does additional investigation – how did Toyota come up with that arrangement?
>
> **A.** That -- you know, they -- the groups that perform that work were created before my time. So, you know, the -- what founded us creating a fraud group and a credit dispute group, I'm sure it's a combination of legal and leadership and risk and compliance, you know. It's -- these areas are heavily regulated, so, you know, there's a lot of scrutiny, you know, from our internal compliance and legal teams and leadership as well as, you know external factors and different things that, you know, when we publish a procedure, it's not we got together because we're the group that does this and this is what we're doing now. It's we need multiple levels of approval and everything else. So it's certainly a group effort that got us where we were at the time or where we are today.
>
> **Q.** Okay. But you don't know what Toyota considered in coming up with that position -- that procedure; right?
>
> **A.** Correct. Specifically, no.
>
> **Q.** Do you know -- I beg your pardon. I talked over you.
>
> **A.** That's okay. I mean, I wouldn't specifically know, right? I wasn't in the meeting where they were determined. But like I said, you know, leadership is involved in those procedures, legal has to sign off on those procedures, enterprise compliance has to sign off on those procedures.
>
> **Q.** Okay. But you're here testifying on behalf of Toyota, and so I want to know what Toyota considered when it created these procedures.
>
> **A.** I don't know exactly what Toyota considered when it created, you know, those areas.
>
> **Q.** Do you know if Toyota read and considered any court decisions?
>
> **A.** I don't know.

10

> **Q.** Do you know if Toyota looked at any regulatory authority, something from the Federal Trade Commission or Consumer Financial Protection Bureau, for example?
>
> **A.** I mean, I know we do today to determine policies and procedures in all areas of the organization. But like I said, these procedures were put in place before I moved into this area.
>
> **Q.** Okay. But -- so your answer is that you don't know; right?
>
> **A.** Right. I know we don't make decisions in a silo, but exactly what was looked at, no, I can't sit here and list those things for you.
>
> **Q.** Okay. Do you know what Toyota's interpretation of the Fair Credit Reporting Act was when it created those procedures?
>
> **A.** I wouldn't know exactly what it was when they created those procedures.

(Ex. 3, Rule 30(b)(6) Dep. at 152:3–155:2.) This testimony, though wordy, is bereft of substance. It provides no discussion of Toyota's interpretation of Section 1681s-2(b) as it pertained to the process for investigating Plaintiff's disputes. There is also no discussion of what Toyota considered in arriving at its interpretation. It is well settled that an "I don't know" response by a Rule 30(b)(6) witness is attributable to the entity, meaning the entity truly does not know something. *See Dorsey v. TGT Consulting, LLC*, 888 F. Supp. 2d 670, 685 (D. Md. 2012) (noting that a lack-of-knowledge answer may prohibit an entity from offering contrary evidence at trial). With no reading of the statute to which it can point, Toyota cannot avail itself of *Safeco*'s safe-harbor that applies to an objectively reasonable reading of the statute. *See Cortez v. Trans Union, LLC*, 617 F.3d 688, 721 (3d Cir. 2010) (stating that "[t]he fact that Trans Union's actions rest upon a legal conclusion does not immunize it from liability for reckless conduct" and that "[a] credit reporting agency may also willfully violate the FCRA by adopting a policy with reckless disregard of whether it contravenes a plaintiff's rights"); *Martinez v. Celtic Bank*, No. 22-cv-6327 (KMK), 2024 WL 1020588, at *11 (S.D.N.Y. Mar. 8, 2024) (declining to grant furnisher summary

judgment on willfulness where it did "not actually argue that its interpretation of the statute dispels liability"). Because Toyota did not have a reading of the statute supporting its investigation procedure months ago when deposed, the Court should not permit Toyota to manufacture one at trial.

Whatever Toyota may argue in response about its subjective knowledge of the FCRA's requirements, the Supreme Court has extinguished arguments that such knowledge is irrelevant. In a recent decision, the Court took up the question of knowing conduct under the False Claims Act, and discussed *Safeco* at length in that analysis because the Seventh Circuit focused on it when it considered the defendant's knowledge of its conduct. *United States ex rel. Schutte v. SuperValu Inc.*, 598 U.S. 739, 747–48 (2023). After a thorough analysis of *Safeco* and what should be considered when determining willfulness, the Court noted:

> Thus, as we have stated previously, "[n]othing in *Safeco* suggests that we should look to facts that the defendant neither knew nor had reason to know at the time he acted." By a similar token here, *we do not look to legal interpretations that respondents did not believe or have reason to believe at the time they submitted their claims*.

*Id.* at 755 (emphasis added, citation omitted). In other words, Toyota's knowledge of the FCRA's requirements and what it considered when it came up with its investigation procedures matters. Since its Rule 30(b)(6) witness testified Toyota did not consider anything at the time it came up with those procedures, Toyota should not be able to shore-up those deficiencies at trial.

## V.  Any Reference To Other Miscellaneous, Irrelevant Topics.

### 1.  Reference to the Plaintiff's settlement with any other entity.

Although currently there are no settlements between Plaintiff and other entities, Toyota should not be permitted to refer to any such potential settlement or recovery. Whether and if Plaintiff has recovered from any other entity based on any other claims is irrelevant to the recovery

12

to which he is entitled for her claims based on the FCRA violations at issue by this Defendant. FED. R. EVID. 401. Whether Plaintiff recovered anything from any CRA—confidentiality of those settlements aside—has no bearing on any remaining fact of consequence in this action, which is specifically limited to the question of whether Toyota fulfilled its obligations to under the FCRA in investigating Plaintiff's disputes. In addition, settlements, compromises, and offers to compromise are generally not admissible under Rule 408. FED. R. EVID. 408.

Moreover, the majority view of courts is that there is no set-off, joint-and-several liability, settlement credit, one-satisfaction, or other recovery-reducing principle in the FCRA context. *See Sloane v. Equifax Info. Servs., LLC*, 510 F.3d 495, 501 n.2 (4th Cir. 2007) (rejecting application of the one-satisfaction rule in FCRA case because Equifax failed to prove plaintiff sustained "a 'single indivisible harm,'" and further noting that "[a]rguably, the 'one satisfaction rule' does not even apply to FCRA claims") (collecting cases); *Salgado v. CitiGroup Corp. Holdings, Inc.*, 608 F. Supp. 3d 984, 988 n.4 (C.D. Cal. 2022) (noting "courts in this circuit have found that this rule does not apply to the FCRA") (collecting cases); *Cheetham v. Specialized Loan Servicing LLC*, No. 2:20-cv-762-JCC-DWC, 2021 WL 2137823, at *2 (W.D. Wash. May 26, 2021); *Zook v. Equifax Info. Servs., LLC*, No. 3:17-cv-2003-YY, 2018 WL 10604347, at *2 (D. Or. July 2, 2018) ("[M]ultiple courts have held that there is no equitable offset for causes of action under . . . the FCRA" (collecting cases)); *Vasquez-Estrada v. Collecto, Inc.*, No. 3:14-cv-01422-ST, 2015 WL 6163971, at *2 (D. Or. Oct. 20, 2015) ("Even if plaintiff sought duplicate damages, there is no express or implied right to an offset of amounts that plaintiff may have received in settlement from other FCRA defendants.").[1] Assuming there may ever be a settlement or recovery between Plaintiff

---

[1] Plaintiff expects that in response Toyota will direct the Court to cases holding the opposite of these, but those cases are accurately regarded as the minority view on the topic. *See Hoerchler v. Equifax Info. Servs., LLC*, 568 F. Supp. 3d 931, 936–37 (N.D. Ill. 2021) ("In contrast, the minority

13

and another entity, Toyota will have no reasoned basis to convince the Court to adopt the minority view and have that settlement revealed at trial.

### 2. Any reference to any other litigation involving the Plaintiff or any other claims she may have against any non-Parties.

Toyota should be precluded from making any reference to Plaintiff's claims against other entities or other litigation involving the Plaintiff. Whether the Plaintiff has or is pursuing any claims against any other entity does not have the tendency to make a fact of consequence here more or less likely. FED. R. EVID. 401. The jury will only consider whether the Defendant in this case willfully violated Section 1681s-2(b) and the amount of damages to assess. Even if the Court were to find some relevance in this information, the unfair prejudice would outweigh the probative value, lead to waste of judicial resources, and confuse the jury. FED. R. EVID. 403.

Moreover, Plaintiff would then have to put on evidence to compare the claims, defenses, parties, and damages in order to demonstrate the differences between this Defendant and the claims against it and why it is different from the claims and damages against others. Hence, there is great—and separate—potential for confusion of the jury and unfair prejudice to Plaintiff should this information be introduced. FED. R. EVID. 403.

And, as explained just above, there can be no reasoned argument that any potential amount another party may ultimately pay Plaintiff should have any impact on what the jury determines Toyota should pay.

---

rule—represented in cases from the Northern District of Alabama—is that the one-satisfaction rule does apply to FCRA claims.").

**3.     Any reference to the number or nature of cases handled by the Plaintiff's attorneys or their law firms.**

Toyota should be precluded from referring to the number of cases handled by Plaintiff's Counsel or making negative references about such cases. There is no relevance to any fact at issue in this case that Plaintiff's Counsel handles a large number of consumer cases, including cases like this one. Likewise, Plaintiff cannot manufacture an improper reference to Defense Counsel, its clients, or its defense-side practice. The Court should ensure that no improper reference to other cases is made, including in the form of questions, comments regarding attorneys' fees obtained by consumer lawyers, or the amount of damages awarded in some cases. All such comments would be irrelevant, certainly, but also would serve to create a negative impression of consumer cases in an effort to drive down the amount that may otherwise be awarded to Plaintiff. Thus, Toyota should be precluded from introducing such evidence or argument.

### CONCLUSION

For these reasons, the Plaintiff respectfully seeks an Order prohibiting introduction of evidence, testimony, discussion or argument on the foregoing issues.

Respectfully Submitted,

**IULIIA POTAPOVA,**

By: ___*/s/ Abel L. Pierre*___
Abel L. Pierre, Esq.
140 Broadway, 46th Floor
New York, NY 10005
Telephone: (212) 766-3323
Fax: (212) 766-3332
Email: abel@apierrelaw.com

Craig C. Marchiando, Esq.
**CONSUMER LITIGATION ASSOCIATES, P.C.**
763 J. Clyde Morris Blvd., Suite 1-A
Newport News, VA 23601
Telephone: (757) 930-3660
Fax: (757) 930-3662
Email: craig@clalegal.com

*Counsels for Plaintiff*