# EXHIBIT 1

Page 29

 1      Q.   Do you know what an ACDV is?  Have you
 2   heard of that?
 3      A.   I know what it is.  I don't know the
 4   acronym of it, but I know -- I kind of in a sense
 5   know what it is.
 6      Q.   Okay.  Is it something that you deal
 7   with ordinarily when you're conducting the kind of
 8   dispute investigations that we're talking about?
 9      A.   No.  That's a separate department.
10      Q.   Okay.  What about e-OSCAR?  Do you know
11   what e-OSCAR is?
12      A.   I know what it is.
13      Q.   Okay.  Is it something that you use when
14   you're conducting the sort of fraud investigations
15   that we're talking about?
16      A.   No.
17      Q.   And you don't use ACDVs either; right?
18      A.   Say that again, sir.
19      Q.   You don't use -- or I guess maybe I
20   should say this more clearly.  You don't use or
21   complete ACDVs either; right?
22      A.   No.

Page 76

 1   Trade Commission identity theft report,

 2   Ms. Potapova eventually submitted a police report

 3   too; didn't she?

 4        A.   Yes.

 5        Q.   Okay.  So paragraph 10, let's move on to

 6   that one.  It says the investigation was assigned

 7   to you.  And then it talks about investigative

 8   history notes as Exhibit L.  So let's go down

 9   there and just make sure that we know what we're

10   talking about when we look at Exhibit L.  So if

11   you'll meet me at Exhibit L.  That's just one

12   exhibit past where we were a minute ago with the

13   fraud investigation request.

14        A.   Okay.  I'm there.

15        Q.   Okay.  So Exhibit L it's two pages;

16   right?

17        A.   Yes.

18        Q.   I didn't understand your answer.  I'm

19   sorry.

20        A.   Yes.

21        Q.   Okay.  And are these the notes that you

22   were discussing earlier in your testimony when we

Page 77

```
 1   talked about what you reviewed to get ready for
 2   today?
 3        A.   Correct.
 4        Q.   Okay.  And how are these -- how are
 5   these notes kept at Toyota?
 6        A.   They are kept in a database that we
 7   have, a fraud database.  And it's also kept in
 8   Salesforce, which is where all the notes, you
 9   know, for a particular customer.
10        Q.   Okay.  And it seems like this might just
11   be a Microsoft Word document.  That's not what it
12   is, though; right?  This is an output from one of
13   those sources that you just described; right?
14        A.   This document right here, it may have
15   been a cut and paste of the notes that we have in
16   our database.
17        Q.   Okay.  But you're not really sure either
18   way how this was created; right?
19        A.   I can tell you that it's a -- it's the
20   actual notes that are in the database.  So it was
21   kind of like a cut and paste of our notes.
22        Q.   Okay.  And when you -- excuse me.  When
```

Page 78

```
 1   you view these notes, you view them electronically

 2   on Salesforce or the other database; right?

 3         A.    Correct.

 4         Q.    Can anyone else view them?

 5         A.    Yes.

 6         Q.    Okay.  Who else might be able to view

 7   those?

 8         A.    Whoever has access to Salesforce.

 9         Q.    Okay.  Do you know whether someone who's

10   investigating a credit reporting dispute can view

11   them?

12         A.    Yes.

13         Q.    Do you know how we would know whether

14   someone did view them?

15         A.    No.

16         Q.    Is -- have you -- is there any

17   indication on anything that you've seen in

18   preparation for your testimony that anyone that

19   was investigating a credit reporting dispute for

20   Ms. Potapova looked at these notes?

21         A.    Can you ask that question one more time?

22         Q.    Sure.
```

```
 1              Is there anything that you've seen in
 2   preparation for your testimony or otherwise that
 3   indicates that anyone what was conducting a credit
 4   reporting dispute for Ms. Potapova viewed these
 5   notes?
 6        A.   No.  I have no way to know that.
 7        Q.   Let's go back to your declaration.
 8   We're on paragraph 11.
 9        A.   Okay.
10        Q.   Are you with me?
11        A.   Yes.
12        Q.   This says on or about September 4th,
13   2019, you contacted Ms. Potapova on the phone to
14   discuss her claims.
15             Do you see that?
16        A.   Yes.
17        Q.   And then there's a following paragraph
18   that says pursuant to your communication with her,
19   she indicated among other information that she was
20   business partners with the alleged buyer on the
21   vehicle account.
22             The buyer had previously requested that
```