**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IULIIA POTAPOVA,<br><br>           Plaintiff,<br><br>      v.<br><br>TOYOTA MOTOR CREDIT<br>CORPORATION,<br><br>           Defendant. | Case No. 1:23-CV-00571 |

---

**DEFENDANT TOYOTA MOTOR CREDIT CORPORATION'S MOTIONS *IN LIMINE*
TO PRECLUDE CERTAIN EVIDENCE, TESTIMONY OR ARGUMENT**

---

**WONG FLEMING**
821 Alexander Road, Suite 200
Princeton, New Jersey 08540
Tel: (609) 951-9520
Fax: (609) 951-0270
dstokes@wongfleming.com
*Attorneys for Defendant Toyota Motor
Credit Corporation*

Dafney Dubuisson Stokes, Esq.
Of counsel and on the Brief.

i

# Table of Contents

I.    ARGUMENT ................................................................................................ 1

II.   RELEVANT FACTUAL BACKGROUND ................................................... 1

III.  STANDARD FOR MOTIONS IN LIMINE ................................................. 2

A.    THE COURT SHOULD PRECLUDE ANY TESTIMONY, EVIDENCE OR ARGUMENT IN SUPPORT OF PLAINTIFF'S CLAIM FOR ACTUAL AND ECONOMIC DAMAGES ........................................ 3

      1.    PLAINTIFF HAS FAILED TO PRODUCE PROOF ANY ACTUAL DAMAGES AND NONE THAT ARE ATTRIBUTABLE TO TMCC'S INVESTIGATION. ...................................... 4

      2.    PLAINTIFF'S AND VARELA'S TESTIMONY REGARDING ACTUAL AND/OR ECONOMIC IS IMPERMISSIBLE OPINION, HEARSAY AND SPECULATIVE AND SHOULD BE PRECLUDED. ........................................................ 6

B.    THE COURT SHOULD PRECLUDE ANY TESTIMONY, ARGUMENT OR EVIDENCE REGARDING WHAT TMCC KNEW OR SHOULD HAVE KNOWN AT THE TIME OF THE LEASE AGREEMENT. ..................................................................................... 9

C.    THE COURT SHOULD PRECLUDE ANY TESTIMONY, ARGUMENT OR EVIDENCE REGARDING THE CURRENT STATUS OF THE VEHICLE INCLUDING ANY REFERENCES TO REPOSSESSION, SALE OR ANY REMAINING DEFICIENCY BALANCE. ................................... 12

D.    THE COURT SHOULD PRECLUDE ANY TESTIMONY, ARGUMENT OR EVIDENCE REGARDING OR RELATING TO THE ACDV REPORTS AND BLOCK REPORTS AS TO BUYER SANAT YARMUKHAMEDOV AS WELL AS ANY DISCUSSION ABOUT BUYER'S FINANCIAL DIFFICULTIES. ............................................................................. 14

E.    THE COURT SHOULD PRECLUDE ANY TESTIMONY, ARGUMENT, OR EVIDENCE THAT TMCC MUST SHOW OFFER, ACCEPTANCE, CONSIDERATION, MUTUAL ASSENT AND INTENT TO BE BOUND REGARDING THE LEASE AGREEMENT WITH PLAINTIFF ............. 17

IV.   CONCLUSION ........................................................................................ 19

# Table of Authorities

## Cases

Aghaeepour v. N. Leasing Sys., 2024 U.S. Dist. LEXIS 93322 (S.D.N.Y. May 24, 2024)....... 2, 3

Alves v. Verizon, 2010 U.S. Dist. LEXIS 75917 (D.N.J. July 27, 2010)...................................... 9

Burns v. Bank of Am., 655 F. Supp. 2d 240 (S.D.N.Y. 2008) ...................................................... 4

Casella v. Equifax Credit Info. Servs., 56 F.3d 469 (2d Cir. 1995)......................................... 4, 18

Claar v. Burlington N. R.R., 29 F.3d 499 (9th Cir. 1994) ............................................................. 8

Crisafulli v. Ameritas Life Ins. Co., 2015 U.S. Dist. LEXIS 56499 (D.N.J. Apr. 29, 2015) ......... 8

Culley v. Edwards Mfg. Co. of Alberta Lea, 2024 U.S. Dist. LEXIS 228296
    (S.D.N.Y. Dec. 17, 2024)....................................................................................................... 10, 11

Dickson v. N.Y. State Office of Children & Family Servs., 2023 U.S. Dist. LEXIS 226001,
    (E.D.N.Y. Dec. 19, 2023) ........................................................................................................ 12

Foster v. Berwind Corp., 1991 U.S. Dist. LEXIS 6520 (E.D. Pa. May 14, 1991) ...................... 14

Grabin v. Marymount Manhattan Coll., 659 F. App'x 7 (2d Cir. 2016)......................................... 7

Howley v. Experian Info. Sols., Inc., 813 F. Supp. 2d 629 (D.N.J. 2011) .................................... 3

Jenkins v. AmeriCredit Fin. Servs., 2017 U.S. Dist. LEXIS 57560
    (E.D.N.Y. February 14, 2017) ................................................................................................. 3, 4

Jenkins v. LVNV Funding, LLC, 2017 U.S. Dist. LEXIS 57513
    (E.D.N.Y. Feb. 28, 2017).................................................................................................... 17, 18

Leslie v. Experian Info. Sols., Inc., 2023 U.S. Dist. LEXIS 136434 (D. Haw. Aug. 4, 2023)....... 8

McKinley v. CSC Credit Services, 2007 U.S. Dist. LEXIS 34528 (D. Minn. May 10, 2007) ...... 9

Milien v. City of N.Y.,2024 U.S. Dist. LEXIS 175928 (E.D.N.Y. Sep. 27, 2024)............... 15, 16

Montclair v. Ramsdell, 107 U.S. 147, 152, 2 S. Ct. 391, 27 L. Ed. 431 (1883).......................... 18

Moore v. Rubin, 2020 U.S. Dist. LEXIS 267343 (E.D.N.Y. Jan. 31, 2020)................................ 13

Okocha v. HSBC Bank USA, N.A., 2010 U.S. Dist. LEXIS 132152 (S.D.N.Y. Dec. 14, 2010) .. 4

_Philbin v. Trans Union Corp.,_ 101 F.3d 957 (3d Cir. 1996) ............................................... 3

_Powers v. Mem'l Sloan Kettering Cancer Ctr.,_ 2023 U.S. Dist. LEXIS 24344
    (S.D.N.Y. Feb. 10, 2023) ............................................................................ 16

_Puglisi v. Town of Hempstead Sanitary Dist._ 2014 U.S. Dist. LEXIS 206028
    (E.D.N.Y. Jan. 27, 2014) ........................................................................... 13

_Ritchie v. N. Leasing Sys., Inc.,_ 14 F. Supp. 3d 229 (S.D.N.Y. 2014) ............................... 3

_Safeco Ins. Co. of Am. v. Burr,_ 551 U.S. 47, 127 S. Ct. 2201 (2007) ............................... 18

_Sassaman v. Rushmore Loan Mgmt. Servs., LLC,_ 2016 U.S. Dist. LEXIS 173187
    (M.D. Pa. Dec. 15, 2016) ........................................................................... 11

_Suluki v. Credit One Bank, N.A.,_ 666 F. Supp. 3d 403 (S.D.N.Y. 2023) ....................... 4, 18

_United States v. Bermudez,_ 529 F.3d 158 (2d Cir. 2008) ............................................... 12

_United States v. Kosinski,_ 2017 U.S. Dist. LEXIS 180459 (D. Conn. Oct. 31, 2017) ............... 16

_Van Veen v. Equifax Info.,_ 844 F. Supp. 2d 599 (E.D. Pa. 2012) .................................... 18

_Wills v. Amerada Hess Corp.,_ 379 F.3d 32 (2d Cir. 2004) ............................................... 8


## Statutes
15 U.S.C. § 1681n(a) ...................................................................................... 3
15 U.S.C. § 1681o ......................................................................................... 3
15 U.S.C. §1681 ........................................................................................... 2
15 U.S.C. § 1681s-2(b) ................................................................................ 18

## Rules
Rule 7.1 ...................................................................................................... 1
Fed. R. Evid. 401 ............................................................................... 10, 12, 16
Fed. R. Evid. 801 .................................................................................... 7, 14
Fed. R. Rule 802 ........................................................................................... 9
Fed. R. Evid. 701 ................................................................................... 7, 8, 9

## Treatises
Restatement (Second) of Torts § 431(a) ............................................................. 3

## Other Authorities
Matthew Bender & Company, Inc., 1 Federal Courtroom Evidence § 401 (2023) ............... 12

# I.  ARGUMENT

Pursuant to Rule 7.1 of the SDNY local rules and Judge Furman's Pre-trial Order Defendant, Toyota Motor Credit Corporation ("TMCC") hereby moves this Court for an Order precluding Plaintiff, Iuliia Potapova ("Plaintiff" or "Ms. Potapova") from setting forth any testimony, argument, or evidence related to or regarding the following:

1. Any actual and/or economic damages from Plaintiff, Iuliia Potapova and/or her husband, Nicholas Varela ("Mr. Varela") including that plaintiff was denied credit as a result of the any acts and/or omissions of TMCC;

2. What TMCC knew or should have known at the time of the signing of the lease agreement and acceptance of assignment from Lexus of Queens;

3. The current status of the vehicle including any reference to repossession and/or sale of the vehicle, remaining deficiency balance on the vehicle account and TMCC's decision not to file suit and collect upon the deficiency;

4. ACDVs and Block report as to Buyer, Sanat Yarmukhamedov ("Buyer") and any information contained within regarding Buyer's alleged financial difficulties; and

5. That TMCC must show offer, acceptance, consideration, mutual assent and intent to be bound regarding the Lease Agreement with Plaintiff.

# II.  RELEVANT FACTUAL BACKGROUND

On or about October 2, 2017, Sanat Yarmukhamedov applied for and entered into a Motor Vehicle Lease Agreement for a 2017 Lexus RX 350 from Lexus of Queens ("Lease Agreement"). Ms. Potapova was listed as co-applicant and co-lessee on the subject vehicle.  The purchase was documented in the Lease Agreement and was assigned to TMCC ("TMCC tradeline"). Approximately, two years later, in February 2019, Plaintiff contacted TMCC both

1

directly and indirectly through the credit reporting agencies to dispute the accuracy of the TMCC tradeline appearing on her credit report. Plaintiff stated that she was the victim of identity theft, did not sign the Lease Agreement and should not be responsible for the debt.  TMCC responded to the indirect disputes by requesting additional information with which to open an identity theft investigation and by ultimately verifying the account information with the credit reporting agencies. TMCC responded to Plaintiff's direct dispute by conducting an identity theft investigation. Pursuant to the identity theft investigation, TMCC found no evidence with which to conclude that Plaintiff was the victim of identity theft and verified the account. TMCC then closed the investigation as non-fraud.

Plaintiff's Complaint alleges violations of the Fair Credit Reporting Act, 15 U.S.C. §1681 et seq ("FCRA"), and asserts that TMCC is reporting inaccurate information on her credit report and that TMCC failed to conduct a reasonable investigation into Plaintiff's claims as required under the FCRA. Plaintiff alleges claims of actual damages as well as damages for emotional distress and punitive damages.

### III. STANDARD FOR MOTIONS IN LIMINE

"A district court's inherent authority to manage the course of its trials encompasses the right to rule on motions in limine." Aghaeepour v. N. Leasing Sys., 2024 U.S. Dist. LEXIS 93322, at *5 (S.D.N.Y. May 24, 2024) (internal citations omitted). "The purpose of a motion in limine is to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial." Id. (internal citations omitted). Evidence challenged in a motion in limine "should only be precluded when it is clearly inadmissible on all possible grounds." Id. (internal citations omitted). Nonetheless, "a court's decision on the admissibility of

evidence on a motion in limine may be subject to change when the case unfolds . . . because the actual evidence changes from that proffered by the movant." Id. (internal citations omitted).

**A.  THE COURT SHOULD PRECLUDE ANY TESTIMONY, EVIDENCE OR ARGUMENT IN SUPPORT OF PLAINTIFF'S CLAIM FOR ACTUAL AND ECONOMIC DAMAGES**

Evidence, testimony, questions, or arguments as to Plaintiff's claim for actual and economic damages should be precluded at trial because 1) Plaintiff has failed to establish that TMCC was a substantial factor in any alleged injury and 2) Plaintiff has failed to bring forth any expert testimony to delineate any evidence of economic harm that may have occurred as a result of any conduct on the part of TMCC.

Under the FCRA, Plaintiff bears the burden of proving preponderance of the evidence a causal connection between the acts or omissions of the furnisher and their alleged damages. Howley v. Experian Info. Sols., Inc., 813 F. Supp. 2d 629, 636 (D.N.J. 2011). A Plaintiff must provide evidence that the alleged inaccuracy was a "substantial factor" that brought about the injury. See Philbin v. Trans Union Corp., 101 F.3d 957 (3d Cir. 1996) (citing Restatement (Second) of Torts § 431(a)). The burden of causation remains with the Plaintiff at all times and never shifts to the Defendant. Philbin, 101 F. 3d. at 37; see also Jenkins v. AmeriCredit Fin. Servs., 2017 U.S. Dist. LEXIS 57560, *22-23 (E.D.N.Y. February 14, 2017).

Negligent violations of the FCRA entitle a Plaintiff to collect actual damages and attorneys' fees. 15 U.S.C. § 1681o; id. at *23.  A defendant who willfully violates the FCRA is liable for "any actual damages sustained by the consumer as a result of the failure or damages of not less than $100 and not more than $1,000, punitive damages, and attorneys' fees." 15 U.S.C. § 1681n(a); see also Ritchie v. N. Leasing Sys., Inc., 14 F. Supp. 3d 229, 239 (S.D.N.Y. 2014).

Actual damages under the FCRA "may include a denial of credit, as well as humiliation and mental distress, even in the absence of out-of-pocket expenses. . .[.]" Jenkins, 2017 U.S.

Dist. LEXIS 57560, *25. Where a plaintiff claims to have suffered actual damages in the form of a loss of credit, he "must present evidence of a causal relation between the violation of the statute and the loss of credit, or some other harm." Burns v. Bank of Am., 655 F. Supp. 2d 240, 259 (S.D.N.Y. 2008). Further, a "[p]laintiff must provide at least some evidence that his denial of consumer credit or similar lost opportunities are attributable to defendants' failure to correct the furnished information after receiving notice of the dispute." Okocha v. HSBC Bank USA, N.A., 2010 U.S. Dist. LEXIS 132152 (S.D.N.Y. Dec. 14, 2010). "Any harm must be traceable to the inaccurate, FCRA-violating information and not just to the report that contained that information or to any accurate data within the same report. Casella v. Equifax Credit Info. Servs., 56 F.3d 469 (2d Cir. 1995).

1. **PLAINTIFF HAS FAILED TO PRODUCE PROOF OF ANY ACTUAL DAMAGES AND NONE THAT ARE ATTRIBUTABLE TO TMCC'S INVESTIGATION.**

As an initial matter, Plaintiff has failed to produce any proof of actual damages. In order to recover under a negligence theory, plaintiff must establish actual damages *attributable to* defendants' unreasonable investigation." Suluki v. Credit One Bank, N.A., 666 F. Supp. 3d 403, 413 (S.D.N.Y. 2023), quoting Okocha v. HSBC Bank USA, N.A., 2010 U.S. Dist. LEXIS 132152, 2010 WL 5122614, at *5 (S.D.N.Y. Dec. 14, 2010) (emphasis added). In other words, if no causal connection between the unreasonableness of the defendant's investigation and the inaccuracy that caused the plaintiff damages, then the plaintiff cannot prevail against that defendant. *See* Id.

Plaintiff testified that she was denied a car loan, denied a mortgage, unable to rent an apartment and given a high interest rate on a credit card. [See Exh. A. Potapova dep. 102:25-103:17.] Despite her assertions, Plaintiff presented no evidence that her credit report caused her

to lose out on any of these opportunities.  Plaintiff has not provided any proof of an actual denial of credit, any proof that any adverse credit action was taken against her nor proof that TMCC was a proximate cause of a denial and/or adverse credit action. <u>Napoleon v. 5665 Sunrise Highway Corp., 2021 U.S. Dist. LEXIS 149492 (E.D.N.Y. July 7, 2021)</u> ([Plaintiff's] claim cannot survive because [Plaintiff] has proffered no evidence from which a reasonable jury could conclude that she sustained actual damages.).

As evidence of these "denials," Plaintiff points to one hearsay correspondence from Mortgage Access Corp (See Ex. E., Mortgage Access Correspondence). However, this inadmissible correspondence is not a denial and makes no mention of any credit denials. [Exh. A., Potapova dep., 104: 5-13] It is merely an explanation of credit and the factors that Mortgage Access Corps takes into consideration upon providing credit to its customers. Further, it makes no specific mention of TMCC as a source of any denials or adverse credit history. In fact, the letter is clear that the "Key factors associated with adversely affect your credit score" include "number of accounts with delinquency, proportion of balance to high credit on revolving accounts, amount owed on accounts too high…" (See Ex. E). In her deposition, Ms. Potapova admitted that her credit report showed at least four accounts containing "potentially negative information", any of which Mortgage Access Corps may be referring to. [ Ex. A., Potapova dep, 110: 2-11]

Plaintiff has not provided any admissible proof of higher-than-normal interest rate on any credit card applications, other than her own conjecture and speculation. Plaintiff has not gotten expert testimony to show any economic harm, has also not produced any credit card applications, denials of credit cards or any explanation from a credit card company that she was being quoted a higher-than-normal interest rate due to bad credit in her discovery. Plaintiff is simply unable to

prove that she has suffered any actual damages outside of her own speculation, conjecture and belief. As such, evidence, such as the inadmissible hearsay correspondence from Mortgage Access Corp, is irrelevant and speculative testimony from both Plaintiff and Mr. Varela regarding actual damages and must be precluded.

### 2. PLAINTIFF'S AND VARELA'S TESTIMONY REGARDING ACTUAL AND/OR ECONOMIC DAMAGES IS IMPERMISSIBLE OPINION, HEARSAY AND SPECULATIVE AND SHOULD BE PRECLUDED.

As stated above, Plaintiff has failed to produce any proof of actual and/or economic damages in the form of credit denials or higher than normal interest rates. The only "evidence" of this nature is Plaintiff's and her husband's own self-serving testimony.

In her deposition, Plaintiff testified as follows:

"Yes, I wanted to get the car in 2020. My application was denied as a result my fiancé had to get it under his name, which caused an absolute inconvenience situation for me because I was the one who had to drive it. It has impacted his credit obviously. Then in 2022 we were about to buy a house. Our application was denied because of that. As a result, we could have had at least 80,000 in equity right now, but we're still living in rental apartment because it is still on my record. I cannot apply for a mortgage right now because with the current interest rates and real estate market. It's impossible to buy anything. My credit card interest instead of being like 18, 19 percent is now 29 percent." [Ex. A., Potapova dep. 102:25-103:17.]

Plaintiff's husband, Mr. Varela testified that they were offered a high interest rate on a credit card [ See Exhibit B., Varela dep. 38:3-4], were denied a car lease [Ex. B. 38:8-9], and denied for a home mortgage [ Ex. B., 38:11-20]. Mr. Varela further testified that they were provided proof of these denials in the way of letters from the company and a letter from their realtor, which specifically stated that Plaintiff's credit was the reason for these denials [Ex. B. 38:23- 39:3].  For the credit card, there was no denial and no explanation given, other than a high interest rate. [Ex. B. 39:13-15].

6

Other than the inadmissible hearsay Mortgage Access Corp correspondence which is not a credit denial, Plaintiff has not admissible provided proof of any of these alleged denials, no testimony from the dealer, her realtor or any financing company. She also is not producing any expert testimony on this issue. The only proof of credit denials, potential effect on credit, and higher interest rates are testimonial in nature from Plaintiff and her Mr. Varela. This testimony from Plaintiff and Mr. Varela must be excluded as improper lay opinion, hearsay and speculation.

Under Federal Rule of Evidence 701, if a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702." Fed. R. Evid. 701. "It is the proponent of the lay opinion testimony who must satisfy the rule's three foundational requirements." Grabin v. Marymount Manhattan Coll., 659 F. App'x 7 (2d Cir. 2016). Hearsay is an out of court statement offered for the truth of the matter asserted and is generally inadmissible. Fed. R. Evid. 801. While there are many exclusions and exceptions to the hearsay rule. None of them are applicable here

In her deposition, Plaintiff offered only speculative testimony about being denied credit, higher interest rates, and lost opportunities and further speculates about the financial implications of these alleged denials, including lost equity from not purchasing a home and higher interest rates on her credit cards. However, Plaintiff has failed to present any objective evidence supporting these claims, including any written correspondence from lenders or credit issuers and her claim of high card interest rates is based solely on her own assumptions, without proof that the rate is tied to the disputed TMCC account. Plaintiff's assertion that she "could have had at

least $80,000 in equity" is wholly speculative, as it depends on market conditions, the timing of the home purchase, and other variables unrelated to the alleged credit report inaccuracy. Under Federal Rule of Evidence 701, lay opinion testimony must be rationally based on the witness's perception and not speculative. Plaintiff's statements regarding causation between her alleged damages and the TMCC account do not meet this standard, as they are unsupported by concrete evidence or personal knowledge. Leslie v. Experian Info. Sols., Inc., 2023 U.S. Dist. LEXIS 136434, at *19 (D. Haw. Aug. 4, 2023)(an expert is not required where "no special expertise [is] necessary to draw a causal inference," but expert testimony is required if making the connection between the act and the injury requires specialized knowledge.), see also Claar v. Burlington N. R.R., 29 F.3d 499, 504 (9th Cir. 1994); see also Wills v. Amerada Hess Corp., 379 F.3d 32, 46 (2d Cir. 2004) ("[W]here an injury has multiple potential etiologies, expert testimony is necessary to establish causation.").

Mr. Varela's testimony suffers from the same defects. Similarly, Mr. Varela's testimony about credit denials and higher interest rates is impermissible lay opinion and hearsay. While Mr. Varela testified that they received letters from lenders and their realtor stating that Plaintiff's credit was the reason for the denials, none of these documents have been produced. This failure to provide corroborating evidence renders Mr. Varela's testimony inadmissible as it relies on hearsay statements and unverified documents. Mr. Varela's claim regarding a high-interest credit card rate is unsupported, as he admits there was no formal denial or explanation provided. His statements about the mortgage and car lease denials are based on alleged communications from third parties, that is being used to assert the truth of the matter and thus constitute inadmissible hearsay. Courts have routinely rejected unsupported testimony regarding damages under the FCRA. Crisafulli v. Ameritas Life Ins. Co., 2015 U.S. Dist. LEXIS 56499 (D.N.J. Apr. 29,

2015)(Plaintiff's assertions of injury alone, with no corroborating evidence or factual support is not sufficient for a finding of actual damages under the FCRA). Alves v. Verizon, 2010 U.S. Dist. LEXIS 75917, at *17-18 (D.N.J. July 27, 2010) ("Without personal knowledge or expert testimony, plaintiff's own affidavit that she received a higher interest rate due to a particular credit report is not sufficient to allow the recovery of damages resulting from the receipt of a higher interest rate."); see also McKinley v. CSC Credit Services, 2007 U.S. Dist. LEXIS 34528, at *11 (D. Minn. May 10, 2007) (granting summary judgment to defendant on this basis even though plaintiff was a "mortgage loan officer and as a result ha[d] a better understanding of the mortgage industry than others"). The testimony provided by Plaintiff and Mr. Varela fails all three prongs of Rule 701. Their claims about credit denials, interest rates, and financial harm are not rationally based on personal knowledge, are speculative, and implicitly rely on specialized knowledge regarding credit reporting and lending practices. Additionally, Mr. Varela's testimony is based on alleged third-party statements, making it inadmissible hearsay under Fed. Rule 802 and as such, must be precluded.

**B.** **THE COURT SHOULD PRECLUDE ANY TESTIMONY, ARGUMENT OR EVIDENCE REGARDING WHAT TMCC KNEW OR SHOULD HAVE KNOWN AT THE TIME OF THE LEASE AGREEMENT.**

The Court should preclude any testimony, argument or evidence regarding or related to what TMCC may or may not have known or ascertained at the time of its acceptance of the Lease Agreement from Lexus of Queens. Evidence of this sort is not relevant to the claims in this action and would serve only to mislead and confuse the jury, and would be unfairly prejudicial under Fed. R. Evid. 403.

As stated above, an *in limine* motion is intended "to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that

are definitely set for trial, without lengthy argument at, or interruption of, the trial." <u>Culley v.</u> <u>Edwards Mfg. Co. of Alberta Lea,</u> 2024 U.S. Dist. LEXIS 228296, at *3 (S.D.N.Y. Dec. 17, 2024). With certain exceptions, "all relevant evidence is admissible, and evidence which is not relevant is not admissible." Fed. R. Evid. 402. Evidence is relevant if "it has any tendency to make a fact more or less probable than it would be without the evidence; and the fact is of consequence in determining the action." Fed. R. Evid. 401. Relevant evidence may still be excluded by the Court "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403.

This matter comes before the Court pursuant to Plaintiff's claims that TMCC violated the FCRA by reporting inaccurate information to credit reporting agencies and failing to properly investigate Plaintiff's dispute of this alleged inaccurate information. Under the FCRA, a furnisher of information, such as TMCC is required to (1) conduct a reasonable investigation of a credit dispute; (2) review all relevant information available in connection with the dispute; and (3) report the results of the investigation to the consumer reporting agencies. Whether TMCC was present at the dealership and the signing of the lease agreement and whether or not TMCC took any additional steps to "verify" who was present at the vehicle purchase is irrelevant to an analysis of TMCC's investigation of Plaintiff's dispute. Thus, admissibility of this sort of argument is irrelevant, prejudicial and bound to mislead and confuse the jury as to not just the facts at issue but also the law as such argument presupposes some duty upon TMCC to "verify" anything at the time of purchase. No such duty exists under the FCRA.

In Plaintiff's Opposition to TMCC's Motion for Summary Judgment, she states

> As a regular part of its business, Defendant Toyota took on the lease as servicer sometime after it was executed. (PSUF ¶ 5.) In accepting such a transaction as the servicer, Toyota takes no steps to verify any of the information in the accompanying documents. (PSUF ¶ 6.) Toyota does not know how the dealership captures the signatures that appear on those documents. (PSUF ¶ 7.) Toyota likewise does not know if two individuals were present during the execution of the transaction documents, nor if a female was present when the signatures were affixed to the documents or when the vehicle was picked up by the buyer. (PSUF ¶ 8.)

She also states;

> Toyota has no titling documents for the vehicle with Plaintiff's name on them, no registration documents with her name, and no documents showing Plaintiff ever obtained insurance for the vehicle. (PSUF ¶ 13.)

There is no dispute that by the time Plaintiff disputed the TMCC tradeline in 2019, two years had passed since the signing of the Lease Agreement. By the time Plaintiff again disputed her tradeline in 2022, it had been at least four years since the inception of the tradeline. As such, any actions TMCC may have taken with respect to the Lease Agreement at the onset has no bearing on TMCC's subsequent investigation of Plaintiff's identity theft claim. *See* Culley, 2024 U.S. Dist. LEXIS 228296, at *7-8 ("Simply put, irrelevant evidence is unhelpful and inadmissible." Indeed, "raising the unrelated matter [] creates a red herring that will encourage the jury to misread the issue and the evidence."

In Sassaman v. Rushmore Loan Mgmt. Servs., LLC, 2016 U.S. Dist. LEXIS 173187 (M.D. Pa. Dec. 15, 2016), the court granted defendants' *motion in limine* where plaintiff intended to introduce evidence and testimony regarding events which occurred prior to defendant's servicing of plaintiff's loan stating that it was irrelevant to plaintiff's claims, could mislead the jury and was prejudicial. In so denying, the court allowed two pieces of information regarding events prior to the loan agreement to be discussed, that 1) plaintiff and her husband entered into the loan and 2) plaintiff and her husband were now divorced.

11

This case is analogous in that events which occurred prior or at the time that TMCC assumed the Lease Agreement is likewise irrelevant and likely to be more prejudicial than probative. Like in <u>Sassaman</u>, TMCC can concede that the only relevant piece of information from the time of the lease agreement is that in 2017, Buyer entered into a Lease agreement of which Plaintiff was listed as co-signer. Additionally, TMCC assumed the Lease Agreement as the holder and servicer of the contract. Any further information or argument which relates or alludes to additional duties for "verification" on the part of TMCC should be precluded pursuant to Rule 402 and 403.

C.  **THE COURT SHOULD PRECLUDE ANY TESTIMONY, ARGUMENT OR EVIDENCE REGARDING THE CURRENT STATUS OF THE VEHICLE INCLUDING ANY REFERENCES TO REPOSSESSION, SALE OR ANY REMAINING DEFICIENCY BALANCE.**

The Court should preclude any testimony, argument or evidence regarding or related to the current status of the vehicle, including any and all reference to repossessions and/or sale of the vehicle and any deficiency that may be remaining on the TMCC vehicle account and whether TMCC opted to seek collection of the deficiency balance in court. Evidence of this sort is not relevant to the claims in this action and would merely serve as a distraction to the jury, and its far more prejudicial than probative.

Under Federal Rule of Evidence 401, evidence is relevant only if it has a tendency to make a fact of consequence in determining the action more or less probable. <u>Dickson v. N.Y. State Office of Children & Family Servs.</u>, 2023 U.S. Dist. LEXIS 226001, at *7 (E.D.N.Y. Dec. 19, 2023) "In making a Rule 403 determination, courts should ask whether the evidence's proper value 'is more than matched by [the possibility] ... that it will divert the jury from the facts which should control their verdict.'" Evidence is "not relevant if it does not tend to prove or to disprove

12

a matter at issue in the case." Matthew Bender & Company, Inc., 1 Federal Courtroom Evidence § 401 (2023). The Court has "broad discretion to balance probative value against possible prejudice" under Rule 403, <u>United States v. Bermudez</u>, 529 F.3d 158, 161 (2d Cir. 2008).

The current status of the vehicle and the vehicle account does not tend to prove or disprove any material fact related to the claims or defenses in this case under the FCRA. This action centers on whether TMCC's credit reporting was even inaccurate as a threshold matter, and then if that threshold requirement is met, whether TMCC conducted a reasonable investigation into Plaintiff's disputes. The status of the vehicle as repossessed, balance on the account or TMCC's decision not to file suit to collect upon this deficiency does not bear on any of these issues. Evidence, testimony or argument related to current status of the subject vehicle is wholly unrelated to TMCC's investigation or credit reporting obligations under the FCRA. Accordingly, this evidence does not satisfy the relevance threshold of Rule 401.

This evidence should also be excluded under Rule 403 as it has a high likelihood of unfairly prejudicing the jury against TMCC by focusing on TMCC's decision to seek repossession of the vehicle but not to file suit as against Plaintiff or Buyer for any remaining deficiency on the TMCC tradeline. Though the reasons may be business in nature, this may confuse and mislead the jury who may instead be focused on TMCC's intent, allowing the jury to draw improper inferences unrelated to the facts and claims at issue. These arguments are also a waste of time by introducing collateral issues that have no bearing on the actual claims or defenses, leading to undue delay in trial proceedings.

Courts generally exclude evidence of other lawsuits, even if the other lawsuits are related to the case before the court. <u>Moore v. Rubin</u>, 2020 U.S. Dist. LEXIS 267343, at *9 (E.D.N.Y. Jan. 31, 2020). See also <u>Puglisi v. Town of Hempstead Sanitary Dist.</u> 2014 U.S. Dist. LEXIS

206028 (E.D.N.Y. Jan. 27, 2014) (Such evidence is excluded because the probative value of the existence of other lawsuits typically is substantially outweighed by the danger of unfair prejudice. It would stand to reason that argument that another lawsuit does not exist would have the same prejudicial effect. See <u>Foster v. Berwind Corp.</u>, 1991 U.S. Dist. LEXIS 6520 (E.D. Pa. May 14, 1991) (excluding evidence of other lawsuits on the basis that "the complaints in these other actions are just that: allegations" and "are dispositive of nothing and would confuse the complex issues already present").

Therefore, any argument or testimony regarding or related to TMCC's repossession and sale of the subject vehicle, any remaining deficiency balance on the vehicle and TMCC's decision not to file suit against Plaintiff or Buyer should be precluded.

**D. THE COURT SHOULD PRECLUDE ANY TESTIMONY, ARGUMENT OR EVIDENCE REGARDING OR RELATING TO THE ACDV REPORTS AND BLOCK REPORTS AS TO BUYER SANAT YARMUKHAMEDOV AS WELL AS ANY DISCUSSION ABOUT BUYER'S FINANCIAL DIFFICULTIES.**

The Court should preclude any testimony, argument or evidence regarding or related to the "block report" as to Buyer Sanat Yarmukhamedov, any ACDVs associated with Buyer as well as any financial difficulties of which Buyer may have complained of within his ACDVs. Preclusion of this evidence is warranted because it is irrelevant, constitutes hearsay, and the introduction of such evidence would be unduly prejudicial to TMCC.

Hearsay is an out of court statement offered for the truth of the matter asserted and is generally inadmissible. Fed. R. Evid. 801. While there are many exclusions and exceptions to the hearsay rule. None of them are applicable here.

Plaintiff intends to offer evidence which shows that on or about December 2022, Buyer contacted the credit reporting agencies requesting a "block" on his credit report for the TMCC

tradeline. Buyer's purported reason for this "block" was that he was the victim of some sort of fraud and/or identity theft. As a result of Buyer's request, the credit reporting agencies issued a 'block report' to TMCC requesting that TMCC immediately block and delete the TMCC tradeline from Buyer's credit report. TMCC complied with this request.  See Ex. D.  TMCC's corporate designee, Anthony Glasscock ("Mr. Glasscock") testified in his deposition that at the time of this request, from about 2020 to 2022, it was the policy and procedure of TMCC to immediately comply with any "all-block" requests from credit reporting agencies without further investigation. [See Exhibit C, Glasscock Dep. 160:8- 161:21]. Mr. Glasscock further testified that if a block request had been issued for Plaintiff, TMCC would have complied with it as well. [Ex. C., Glasscock Dep. 233:12-15]. Plaintiff has maintained that TMCC's blocking of the tradeline on Buyer's report and not on Plaintiff is evidence that TMCC does not investigate disputes or information from credit reporting agencies. Not only is this inaccurate, but introduction of such evidence, being offered for the truth of the matter, is inadmissible hearsay since Buyer will not be testifying.

Similarly, any testimony or evidence regarding any credit disputes that Buyer may have initiated with TMCC and any information he may have provided within these disputes as to his financial circumstances is also hearsay and thus inadmissible. On or about August 2021 and October 2021, Buyer issued several disputes to the credit reporting agencies. Pursuant to notations on the ACDV reports, Buyer indicated that he was having financial difficulties and that he himself may have been the victim of identity theft. Inclusion of these ACDV reports is irrelevant and unnecessary, prejudicial and hearsay within hearsay.

Rule 805 of the Federal Rules of Evidence states that hearsay within hearsay is inadmissible, unless "each part of the combined statements conforms with an exception to the

hearsay rule." <u>Milien v. City of N.Y.</u>,2024 U.S. Dist. LEXIS 175928, at *6 (E.D.N.Y. Sep. 27, 2024). Here, the ACDVs themselves may be considered hearsay if they are being offered for the truth of the matter and Buyer's statements within the ACDVs that he was either the victim of identity theft or he was undergoing financial difficulties is likewise unsubstantiated hearsay. Buyer is not a party to this action, he was not deposed, his testimony or documentary evidence was not was solicited by either party. As such, any statements or documentary evidence allegedly from Buyer are irrelevant.

In <u>Powers v. Mem'l Sloan Kettering Cancer Ctr.</u>, 2023 U.S. Dist. LEXIS 24344 (S.D.N.Y. Feb. 10, 2023) the court granted Defendant's motion in limine precluding Plaintiff from presenting evidence regarding the implementation of hospital policy for new patients. The court stated that not only is the evidence irrelevant as it does not relate to Plaintiff's claims and the hospital's dealings with Plaintiff, but to the extent that it may be relevant on other grounds, it is more prejudicial than probative, as it invites the jury to consider hypothetical other patients who are not at issue in the case. <u>See</u> also Rules 401, 402, 403. Likewise in <u>Milien v. City of N.Y.</u>, 2024 U.S. Dist. LEXIS 175928 (E.D.N.Y. Sep. 27, 2024), the Court excluded correspondence including Complaints from "other teachers" as hearsay within hearsay. The court concluded that the complaints and arguments from other teachers had no bearing on Plaintiff or his claims and would be unduly prejudicial as to Plaintiff. See also <u>United States v. Kosinski, 2017 U.S. Dist. LEXIS 180459 (D. Conn. Oct. 31, 2017)</u> (evidence that the Government did or did not prosecute another individual for insider trading has no bearing on any fact of consequence in determining this action)

These cases are analogous to the case at bar. Admission of ACDVs, the block report or any information contained within these documents would serve no purpose except to distract the

jury from the true claims in this matter which are whether Plaintiff was a victim of identity theft and whether TMCC reasonable investigated Plaintiff's claims. Buyer's documents have no bearing on these claims and will not assist the trier of fact in its analysis. As such, they should be precluded.

### E. THE COURT SHOULD PRECLUDE ANY TESTIMONY, ARGUMENT, OR EVIDENCE THAT TMCC MUST SHOW OFFER, ACCEPTANCE, CONSIDERATION, MUTUAL ASSENT AND INTENT TO BE BOUND REGARDING THE LEASE AGREEMENT WITH PLAINTIFF

The Court should preclude any argument that TMCC must show "offer, acceptance, consideration, mutual assent and intent to be bound" regarding the Lease Agreement with Plaintiff. This argument is misleading, distracting and misstates the law in this matter.

As previously stated, this is an FCRA matter in which Plaintiff bears the burden of proof that TMCC was inaccurately reporting on her credit report and that TMCC did not do a reasonable investigation related to her credit reporting disputes. Any argument which seeks to impose additional duties upon TMCC impermissibly misstates the law and will only serve to confuse the jury and the respective positions of the parties.

In her opposition to TMCC's motion for summary judgment, Plaintiff states

"To show Plaintiff is indeed bound by the agreement Toyota claims, Toyota would have to show "an offer, acceptance of the offer, consideration, mutual assent, and an intent to be bound." *Meloni v. RGM Dist., Inc.*, 201 F. Supp. 3d 360, 370 (E.D.N.Y. 2016) (citations omitted). "[T]here must be a manifestation of mutual assent sufficiently definite to assure that the parties are truly in agreement with respect to all material terms." *Id.* Toyota can show none of these things, and has not even tried. It is not any different than if Toyota wanted to hold Plaintiff to an arbitration agreement included in the lease-transaction documents. Because she did not sign anything, Toyota could not compel her to arbitrate. The same result holds for the lease account itself." *Plaintiff's Memorandum of law in Opposition [ECF. 53].*

This characterization grossly misstates TMCC's duties under the FCRA and places an undue burden upon TMCC. As an initial matter, it presupposes that TMCC bears any burden in this

matter at all. Under the FCRA, Plaintiff bears the burden of proof. Jenkins v. LVNV Funding, LLC, 2017 U.S. Dist. LEXIS 57513 (E.D.N.Y. Feb. 28, 2017). It is Plaintiff's burden to show that her account contained an inaccuracy. Suluki v. Credit One Bank, N.A., 666 F. Supp. 3d 403 (S.D.N.Y. 2023). If Plaintiff is unable to meet this burden, the inquiry ends. Id. Plaintiff must also show that TMCC's investigation into her credit dispute was unreasonable. Id. Under no circumstances must TMCC show, as Plaintiff suggests "offer, acceptance, mutual assent, and intent to be bound" by any agreement. Van Veen v. Equifax Info., 844 F. Supp. 2d 599 (E.D. Pa. 2012)furnisher must: 1) conduct an investigation with respect to the disputed information; 2) review all relevant information received from the CRA; 3) report the results of the investigation to the CRA; and 4) if the information is found to be inaccurate or incomplete, report the results to all CRAs to which it originally provided the erroneous information), 15 U.S.C. § 1681s-2(b). The "black letter" law of contracts simply does not apply here and to suggest as such is misleading and extremely prejudicial to TMCC. See Safeco Ins. Co. of Am. v. Burr, 551 U.S. 47, 127 S. Ct. 2201 (2007). ("A court must give effect, if possible, to every clause and word of a statute" (quoting Montclair v. Ramsdell, 107 U.S. 147, 152, 2 S. Ct. 391, 27 L. Ed. 431 (1883). These elements are well-established under the FCRA and are the sole issues for the jury to determine. See Suluki, Jenkins and Van Veen supra. Plaintiff's assertion that TMCC must demonstrate traditional elements of contract formation—such as offer, acceptance, and mutual assent—places a burden on TMCC that is neither legally required nor relevant under the FCRA and must be precluded.

18

# IV. CONCLUSION

For the foregoing reasons, the Court should grant Defendant's Motions *In Limine*, and preclude the introduction of any and all evidence pertaining to 1)any actual and/or economic damages from Plaintiff, Iuliia Potapova and/or her husband, Nicholas Varela;  2) What TMCC knew or should have known at the time of the accepting assignment of the Lease Agreement from dealer, Lexus of Queens; 3) he current status of the vehicle including any reference to possible repossession and/or sale of the vehicle and a remaining deficiency balance on the vehicle account; 4) ACDVs and Block report as to Buyer, Sanat Yarmukhamedov and any information contained within; and 5) that TMCC must show offer, acceptance, consideration, mutual assent and intent to be bound regarding the Lease Agreement with Plaintiff.

Dated: January 16, 2025

<div style="margin-left:40%">

*s/ Dafney Dubuisson Stokes*
Dafney Dubuisson Stokes, Esq.
WONG FLEMING, P.C.
821 Alexander Road, Suite 200
Princeton, NJ 08540
Tel: (609) 951-9520
Fax: (609) 951-0270
Email: dstokes@wongfleming.com
*Attorneys for Defendant Toyota Motor Credit Corporation*

</div>

## CERTIFICATE OF SERVICE

I, Dafney Dubuisson Stokes, hereby certify that on this 16th day of January 2025, I caused to be filed electronically with the United States District Court for the Southern District of New York, a copy of: Defendant Toyota Motor Credit Corporation's Motions in Limine, and emailed such documents to the following individuals at the email addresses listed below.

Abel Luc Pierre
Law Office of Abel L. Pierre, PC
140 Broadway, 46th Floor
New York, NY 10005
212-766-3323
Email: abel@apierrelaw.com

Craig C. Marchiando, Esq.
Consumer Litigation Associates PC
763 J. Clyde Morris Boulevard, Suite 1-A
Newport News, VA 23601
Email: craig@clalegal.com

## <u>CERTIFICATION OF CONFERENCE</u>

Pursuant to 6(B)(i) of the Individual Rules and Practices in Civil Cases of Judge Furman, I hereby certify that Defense counsel for Toyota Motor Credit Corporation, the moving party has conferred by email and telephone with counsel for Plaintiff, Iuliia Potapova in an effort to resolve the issue raised by Defendant's TMCC's *motions in limine* and were unable to reach an agreement to resolve this motion.

Dated: January 16, 2025

<div style="margin-left:40%;">

<u>*s/ Dafney Dubuisson Stokes*</u>
Dafney Dubuisson Stokes, Esq.
Daniel C. Fleming, Esq.
WONG FLEMING, P.C.
821 Alexander Road, Suite 200
Princeton, NJ 08540
Tel: (609) 951-9520
Fax: (609) 951-0270
Email: dstokes@wongfleming.com
*Attorneys for Defendant Toyota Motor*
*Credit Corporation*

</div>

21